## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**SHAWN M. STATES**                                                          **PETITIONER**

**VERSUS**                                      **CIVIL ACTION NO. 3:13CV226 HTW-LRA**

**CHRISTOPHER EPPS**                                              **RESPONDENT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Shawn States was convicted in the Circuit Court of Hinds County, Mississippi, and seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record, the undersigned recommends that his petition be dismissed with prejudice.

### Factual and Procedural Background

States was convicted of capital murder for killing Justin Howard and Antoine Reece while in the commission of armed robbery. He was sentenced to serve two consecutive life terms in the custody of the Mississippi Department of Corrections, without parole. The relevant facts are accurately described in the state court's opinion as follows:

> Antoine Reece's fiancé discovered his dead body at the bottom of the staircase in his apartment. Jackson police later discovered the body of Howard in Reece's apartment as well.
>
> At the crime scene, investigators found two guns, one projectile, and several spent shells. The Mississippi Crime Laboratory determined that two bullets the coroner found in the bodies—although not fired by either of the guns found at the scene—were fired from the same weapon. The gun that fired the fatal bullets was not recovered, and no forensic evidence linking States to the crime was found.
>
> Police initially thought one of the bodies discovered in Reece's apartment was States's, but States's mother quickly reached him by telephone. States told her he had flown to New York and was with a friend. To reach him, States gave his mother a phone number, but the police found that the phone

number was registered to Arianna Torrenegra—States's girlfriend—and had a Florida area code. A quick check confirmed that no person by the name of States had flown to New York that week.

Later, both Reece's and Howard's families notified police of activity on the men's credit cards, in and around the Miami, Florida, area. Miami police arrested States and Torrenegra in a black 1994 Jaguar registered to Reece. Jackson police then drove to Miami to interview States. At trial, the prosecution put the videotape and transcription of the interview into evidence.

During the interview, States claimed that a man named Jonathon Tarver had shown up at Reece's apartment while he and Howard were there, and that Tarver wanted to rob Reece to recover money Reece owed him on a drug deal. States said he had agreed to the robbery because Reece owed him as well. States also admitted that he knew what was going to happen when Tarver went upstairs, so he turned up the volume on the television before Tarver killed Howard. States then told investigators that he and Tarver waited for Reece to return to the apartment, and that he was standing outside when Reece returned. According to States, Tarver shot Reece as Reece went upstairs to look for Howard, causing his body to fall down the stairs.

States told investigators that he and Tarver left Jackson around 6:00 p.m. in Reece's Jaguar, heading for Florida. He said he dropped Tarver off in Jacksonville and drove to Miami to see Torrenegra, who was scheduled for deployment to Iraq in two weeks. States claimed he used the credit cards because they were in the Jaguar, and that Reece owed him a lot of money from an identity-theft scheme. He could not, however, explain why he had Howard's credit cards. Jackson police eventually concluded that "Tarver" was fictitious, and that States was the actual shooter.

At trial, States recanted the statements made to investigators, claiming that he had made the statements because police had coerced him by threatening to charge Torrenegra. States admitted that Tarver was fictitious, but denied any knowledge of the murders. States also admitted that he had used the victims' credit cards, but said that Reece had agreed to sell him the Jaguar, and that he already had paid $3,000 toward the purchase.

*States v. State*, 88 So.3d 749, 752-53 (Miss. 2012).

The Mississippi Supreme Court affirmed Petitioner's convictions and sentences on

May 17, 2012.  On September 11, 2012, Petitioner filed an Application for Leave to

Proceed in Trial Court with a Motion for Post-Conviction Relief, which was denied by

2

the Mississippi Supreme Court on December 12, 2012.[1] Petitioner now brings the instant petition and raises the same grounds that were exhausted on direct appeal and collateral review (as stated by Petitioner):

Ground One: Petitioner's U.S. and Miss. Constitutional rights to a speedy trial was violated due to a 1,108 day delay between arrest and trial during which a critical witness was lost. Petitioner's statutory right was violated by 302 days over 270 day limit set in Miss Code Ann. § 99-17-1.

Ground Two: Ineffective assistance of counsel by failing to raise speedy trial issue at trial court. Also, trial counsel was ineffective for failing to suppress involuntary statement.

Ground Three: Petitioner's statement was involuntary due to threats and improper inducements in violation of several amendments to the US Constitution and Sections 23 & 26 of the Miss. Constitution.

Ground Four: Trial court abused its discretion in giving of instruction S-5 regarding unexplained flight which was misleading and confusing to jury and prejudicial to petitioner.[2]

## STANDARD OF REVIEW

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] ECF No. 12-1; 12-2.

[2] ECF No. 1.

>   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(d)(1), this court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685 694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen,* 558 U.S. 290, 301 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of

4

[federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

## Discussion

In ground one, Petitioner asserts that he is entitled to habeas relief because his right to a speedy trial was violated. According to the record, the murders occurred on April 24, 2007. Petitioner was then arrested in Florida on May 2, 2007; taken into custody by Mississippi officials very soon thereafter; indicted on August 14, 2007; arraigned (according to Petitioner) on November 7, 2007; and, brought to trial on May 17, 2010.

A defendant's right to a speedy trial "attaches at the time of arrest or indictment, whichever comes first." *Dillingham v. United States,* 423 U.S. 64, 65 (1975). Determining whether a Defendant's Sixth Amendment right to a speedy trial has been violated requires a careful balancing of four factors: (1) the length of delay, (2) the reason for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514 (1972); *Leachman v. Stephens*, 581 F. App'x 390 (5th Cir. 2014). In assessing a speedy-trial claim, AEDPA "requires us to give the widest of latitude to a state court's conduct of its speedy-trial analysis." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011); *David v. King*, 584 F. App'x 207 (5th Cir. 2014).

With regard to the first factor, the bare minimum required to trigger a *Barker* analysis is one year. *Amos*, 646 F.3d at 206. The delay must persist for at least 18 months beyond the bare minimum for this factor to strongly favor the accused. *Id.* Here, the delay between Petitioner's arrest and trial exceeded the one-year minimum by more than 18 months. The delay is therefore presumptively prejudicial and requires analysis of the remaining factors. *Divers v. Cain*, 698 F.3d 211, 218 (5th Cir. 2012).

The second *Barker* factor primarily considers "which party is more responsible for the delay." *Laws v. Stephens*, 536 F.App'x 409, 413 (5th Cir. 2013). "At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. Between these extremes fall unexplained or negligent delays, which weigh against the state, 'but not heavily.'" *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008) (internal citations and quotations omitted). Delays caused by overcrowded courts "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

Here, the record reflects that Petitioner was arraigned in November 2007 following his arrest and indictment in the summer of 2007. By agreed order, the trial was then continued approximately five times over the course of the next year, from February 2008 through November 2008, for pre-trial discovery. The trial was continued again from

6

April 2009 to August 2009 following pre-trial motions filed by the defense; and, in January 2010, the trial court *sua sponte* scheduled the trial for May 2010.  No explanation is provided for the delays between November 2008 and April 2009, and August 2009 and January 2010.  While Respondent attributes the unexplained delays to an overcrowded docket, he does not cite any evidence supporting this contention.  On the other hand, Petitioner has presented no evidence that the State was intentionally delaying his case to obtain some undue advantage, and the record shows that he agreed to many of the continuances without objection.  *See Doggett v. United States*, 505 U.S. 647, 656 (1992). At most, the delay can be equally attributed to the government and Petitioner.[3]

The third factor is whether Petitioner diligently asserted his right to a speedy trial. Assertion of this right "receives strong evidentiary weight, while failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Amos*, 646 F.3d at 207 (internal quotations omitted).  In his petition for habeas relief, Petitioner asserts that he sent a letter to the trial court expressing his "hope to have a fair and speedy trial" in September 2007.[4]  He claims that when he was later informed that the letter had been misplaced, he sent a second letter in March 2010.  Petitioner does not produce any evidence, however, to substantiate his claims.  Even if he were deemed to have invoked his right to a speedy trial, the mere assertion of the right does not automatically weigh in

---

[3]ECF No. 13-11, pp. 29-33.

[4]ECF No. 1-1, p.5.

7

his favor. *Divers*, 698 F.3d at 219. "Defendants must 'appropriately assert[ ]" their speedy-trial rights, as viewed in "light of [their] other conduct.'" *Laws*, 536 F. App'x at 413 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986)). The fact that Petitioner agreed to numerous continuances undermines his claim. *Cox v. Stephens*, No. 13-20446, 2015 WL 525326 (5th Cir. Feb. 9, 2015) (finding prejudice arising from speedy trial violation weak where petitioner consented to continuances); *West v. Howell*, 46 F.3d 67 (5th Cir. 1995) (finding no speedy trial violation where delay was partially attributable to defendant's motions and requests for continuance). Thus, assuming *arguendo* that Petitioner invoked his speedy trial right, this factor weighs, at most, only slightly in his favor.

The final element in the *Barker* analysis is whether Petitioner was prejudiced by the delay. Since only the first *Barker* factor weighs heavily in Petitioner's favor, he must make a particularized showing of prejudice resulting from the delay. *Goodrum*, 547 F.3d at 260; *Amos*, 646 F.3d at 208.[5] Prejudice may be established in three ways: (1) proof of oppressive pretrial incarceration; (2) proof of anxiety and concern of the accused; and (3) proof that the defense was impaired by the delay. *Barker*, 407 U.S. at 532.

As to the first two, Petitioner claims he suffered oppressive pre-trial incarceration and anxiety because he was forced to live in substandard conditions under the threat of

---

[5]*United States v. Bishop*, 629 F.3d 462, 466 (5th Cir.2010) ("[D]elays of less than five years are insufficient, by duration alone, to give rise to a presumption of prejudice and relieve the defendant of satisfying *Barker' s* fourth prong.").

possible sexual assault and physical abuse while awaiting trial. As a result, he states that he was placed on anti-depressants and suicide watch. While Petitioner undoubtedly experienced anxiety and concern as a pre-trial detainee, absent proof of substandard conditions or other oppressive factors beyond those that necessarily attend incarceration, this factor does not automatically weigh in his favor. *Hakeem v. Beyer*, 990 F.2d 750, 761 (3rd Cir. 1993); *U.S. v. Avalos*, 541 F.2d 1100, 1115 (5th Cir. 1976) ("Anxiety of the sort 'present to some degree in virtually every case' does not amount to actual prejudice.") (citation omitted); *United States v. Frye*, 489 F.3d 201, 213 (5th Cir. 2007) (rejecting a claim of "oppressive pretrial incarceration" as conclusory and not supported by evidence specifying harm). Even if the Court were to accept Petitioner's claims that he suffered oppressive pretrial incarceration and anxiety, the most serious prejudice-factor is the last "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532).

In this regard, Petitioner claims that he was prejudiced because he was unable to locate Spanish-speaking witnesses – Jose Garcia, Glenda Marin, and Evelyn Irahab – who were interviewed by a police interpreter following the murders. The record reflects that these witnesses gave conflicting accounts concerning the noise coming from the victims' apartment, but were unavailable at trial because they had returned to Mexico. Respondent asserts that Petitioner was not prejudiced by their unavailability because the

9

interpreter read an English translation of their statements for the jury's consideration. Petitioner counters that he was unable to question the witnesses regarding their accounts and elicit more specific facts; he alleges that vital information would have been preserved had he been brought to trial sooner. However, the record reflects that defense counsel indicated that she had been searching for the witnesses since 2008.[6] Hence, Petitioner cannot demonstrate that the witnesses would have been available to testify if the trial had been held at an earlier date. Nor has he demonstrated that their testimony, even with the benefit of cross-examination, would have changed the outcome given both the contradictory nature of their statements and the other evidence presented at trial. *Amos*, 646 F.3d at 208.

In sum, given the deference that this Court must give to the state court's determination on this issue, the state court's denial of Petitioner's speedy-trial claim was not objectively unreasonable, nor contrary to clearly established federal law.

In ground two, Petitioner argues that counsel was ineffective for failing to file a motion for a speedy trial and to suppress his involuntary statements to police. To warrant relief, the Supreme Court has instructed as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that <u>counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient</u>

---

[6]ECF No. 13-8, pp. 7-9.

> performance prejudiced the defense. <u>This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.</u> Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984) (emphasis added). AEDPA additionally requires that Petitioner show that the state court's adjudication of his ineffective assistance of counsel claims was an "unreasonable application" of *Strickland*. "'Surmounting *Strickland's* high bar is never an easy task" and '[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.'" *Vasquez v. Thaler,* 505 F.App'x 319, 326 (5th Cir. 2013) (quoting *Premo v. Moore*, 562 U.S. 115 (2011).

This Court's disposition of Petitioner's speedy-trial claim "forecloses relief on his claim that his lawyer rendered constitutionally ineffective assistance of counsel by failing to file a motion for a speedy trial." *Amos*, 646 F.3d at 209. It was objectively reasonable for the state court to determine that Petitioner's speedy trial claim lacked merit, and thus objectively reasonable for that court to conclude that he was not prejudiced by counsel's failure to move for a speedy trial. *Id*.

The Court similarly finds that Petitioner's confession was not improperly induced as argued in ground three. As discussed *infra*, only Petitioner's testimony supported his contention that his confession was coerced, and it was objectively reasonable for counsel to assume that the trial court would find that there was no coercion. As such, counsel was

11

not ineffective in failing to file a motion to suppress on this basis. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987) (counsel's ineffectiveness depends on whether a motion or an objection would have been granted or sustained had it been made). Accordingly, the state court's rejection of Petitioner's ineffective-assistance-of-counsel claims was not contrary to or an unreasonable application of *Strickland*.

In ground three, Petitioner argues that his confession was involuntary because it was improperly induced. Specifically, he claims that detectives from the Jackson Police Department ("JPD") threatened to prosecute his girlfriend for the murders if he did not confess. The Court notes that prior to trial, defense counsel moved to suppress Petitioner's confession on the grounds that JPD detectives did not have jurisdiction to administer a *Miranda* warning in the state of Florida. *Miranda v. Arizona*, 384 U.S. 436 (1966). During the pre-trial suppression hearing, counsel denied that Petitioner was challenging the voluntariness of his confession, and advised that he was not making any allegation of duress or coercion. Only after the motion to suppress was denied, did Petitioner assert that his confession was unlawfully induced. Given his initial denials of duress or coercion, counsel was not ineffective in failing to file a motion to suppress on this basis.[7] In any event, there is no credible evidence that the police induced a false

---

[7]The record also reflects that counsel objected to the admission of the videotaped confession on hearsay grounds but was overruled. In response to the adverse ruling, counsel cross-examined JPD detectives as to whether an inducement occurred prior to recording the confession. ECF Nos. 13-6, pp. 555-677; 13-7, pp. 693-698, 704-705.

confession in this case. The Mississippi Supreme Court summarily denied this claim as meritless on post-conviction review.[8]

The standard for determining whether a confession is voluntary is whether, taking into consideration the "totality of the circumstances," the statement is the product of the accused's "free and rational" choice. *Martinez v. Estelle*, 612 F.2d 173, 177 (5th Cir. 1980) (quoting *Greewald v. Wisconsin*, 390 U.S. 519, 521 (1968)). If a person "voluntarily, knowingly and intelligently" waives his constitutional privilege, a statement is not considered compelled within the meaning of the Fifth Amendment. *United States v. Rogers*, 906 F.2d 189, 190-91 (5th Cir. 1990). "[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda*, 384 U.S. at 476. To prove coercion, a petitioner must show that the confession "resulted from coercive police conduct and it is essential that there be a link between the coercive conduct of the police and the confession of the defendant. . . . Trickery or deceit only constitutes coercion 'to the extent [the defendant is deprived] of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Byrom v. Epps,* 518 F. App'x 243, 256-57 (5th Cir. 2013) (internal quotations and citations omitted).

---

[8]ECF No. 12-2, p. 1.

13

Petitioner fails to convincingly show coercion here. JPD detectives testified that Petitioner was read his *Miranda* rights, understood them, and voluntarily waived them. They also expressly denied using coercive tactics to induce a confession.[9] Petitioner's two-hour videotaped confession was also played at trial, and Sergeant Eric Smith read the following excerpt in rebuttal to Petitioner's allegations of coercion:

> Q. . . .[I]f you would read this – your statement here to the jury.
>
> A. Yes, sir. Okay. "At this point . . . , and I'm going to be totally honest with you. The fact that you meant – the fact that you told us that you gave her the card and told her to go use it, that's something we'll still have to consult with our district attorney about. But I'm not making you no promises. But seeing how we've investigated crimes like this of a magnitude of even greater than this, I'm not going to make any promises and say that she's free and clear."
>
> Q. And were you telling him that you weren't going to promise him that you guys weren't going to prosecute Ariana Torrenegra?
>
> A. That is correct.
>
> Q. And so you never made that threat . . . to get him to confess?
>
> A. None.[10]

Contrary to what Petitioner argues, nothing in the detective's statements amounted to an unlawful inducement. Detective Smith only stated that he would need to consult with the district attorney concerning the girlfriend's credit card use. No threats, promises, or other coercive statements were made. Nor was Petitioner promised leniency or threatened in any capacity.

---

[9] ECF No. 13-7, p. 84.

[10] ECF No. 13-9, pp. 9-10.

To the extent that Petitioner claims, as he did at trial, that the inducement occurred *before* officers began recording his confession, detectives testified that the confession was recorded in its entirety. "[Q]uestions of credibility, whether of a witness or a confession, are for the jury." *Jackson v. Denno*, 378 U.S. 368, 386 n.13 (1964). The jury considered the testimony of Petitioner and the detectives and found no promises were made in exchange for his confession. AEDPA requires us "to presume that this finding is correct unless rebutted by "'clear and convincing evidence.'" 28 U.S.C. § 2254(e)(1). *Jackson v. Dretke*, 181 F. App'x 400, 405 (5th Cir. 2006).

However, Petitioner has never provided evidence of coercion other than his own testimony. When pressed on cross-examination to explain what JPD detectives said to induce his confession, Petitioner testified as follows:

Q: All three [detectives] said, "Take the wrap and we'll let her go?"

A: That's not what they said.

Q: Well, what did they say?

A: The exact – after we talked for a while, they said— they showed me a photo of Ariana, the same one they showed in the video, and then they were like, "You know you're going to ruin her life if you don't tell us something."

Q: So what were they were going to get her for, credit card fraud?

A: They said they were going to arrest her for the murders.[11]

---

[11]ECF No. 13-9, pp. 3-4.

15

At most, Petitioner's testimony establishes that detectives appealed to his emotions, "a permissible tactic since [Petitioner] was not thereby deprived of knowledge essential to an understanding of [his] rights and the consequences of waiving them." *Byrom*, 518 F. App'x at 257-58 (citing *Hopkins v. Cockrell*, 325 F.3d 579, 584 (5th Cir. 2003); *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir.1992) (emotionalism and confusion alone will not invalidate a confession). "It is reasonable to assume that the cooperation of an arrested person often is prompted by a desire for leniency for himself or others.  Statements or confessions made in such circumstances, if they are voluntary and made with full awareness of the person's rights, are reliable, probative and constitutionally admissible evidence." *United States v. Robertson*, 582 F.2d 1356, 1368 (5th Cir. 1978).

Even if the confession is deemed involuntary,  Petitioner fails to show that it had a substantial and injurious effect in determining the verdict. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).  The jury heard evidence of Petitioner's guilt independent of his confession. Although Petitioner never confessed to personally shooting either victim, and no forensic evidence linked him to the crime, he was found in possession of the victims' personal belongings and admitted that he repeatedly lied about his involvement in the murders.  He also admitted to turning up the volume on the television so that the fictitious Tarver could shoot the victims. Although he later recanted these statements, given the evidence against him, he fails to establish that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law.  Nor has he

shown it to be an unreasonable determination of the facts.  Petitioner's claim on this basis should be denied.

As his final point of error, Petitioner claims that he is entitled to habeas relief because the trial court erroneously granted the State's flight instruction.  The State argued that the flight instruction was warranted because Petitioner failed to give a reasonable explanation of his trip to Florida.  The defense countered that Petitioner had adequately explained that he went to Florida to see his girlfriend—not to escape capture.  The trial court reasoned that the jury could find that Petitioner fled from a consciousness of guilt and granted the instruction.

Challenges to jury instructions rarely form a basis for federal habeas corpus relief.  *Gilmore v. Taylor*, 508 U.S. 333 (1993).  The inquiry is not "whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude."  *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)).  A habeas petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  Even when an instruction is deemed erroneous, habeas corpus relief is not warranted when the error was harmless.  To merit relief, a petitioner must show that the instruction had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v.*

*Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).  Petitioner has not met this burden here.

In rejecting this claim on direct appeal, the Mississippi Supreme Court agreed that the trial court erred in granting a flight instruction because evidence that the defendant fled for an independent reason is not inherently probative of guilt under state law.  The court found that Petitioner's explanation that he went to Florida to visit his girlfriend served as an independent reason for his flight, and absent any evidence of pursuit, or Petitioner's belief that he was about to be discovered, the flight was not inherently probative of his guilt.  *States*, 88 So.3d at 758.  However, the erroneous instruction was harmless in light of the overwhelming evidence presented at trial.  As the court explained:

> . . . States admitted that he was in the apartment when Howard and Reece were killed and that he took Reece's car to Florida. He also admitted that Tarver did not exist—the person who States had said murdered Howard and Reece. Thus, according to States, he was the only person inside the apartment when Howard and Reece were killed. Accordingly, the trial court's error did not contribute to the verdict.

*States*, 88 So.3d at 758.

For purposes of federal review, Petitioner has not demonstrated that the flight instruction so infected the entire trial that it violated his rights to due process or impeded his right to present a meaningful defense.  Nor has he shown a reasonable probability that the verdict might have been different had the instruction been denied.  *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278 (5th Cir. 1985).  Accordingly, the appellate court's resolution of this issue was not contrary to or an unreasonable application of clearly

18

established federal law.  Nor was it based on an unreasonable determination of the facts in light of the evidence.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 6th day of November 2015.

                                                     /s/  Linda R. Anderson
                                    UNITED STATES MAGISTRATE JUDGE